UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 05-60845-CIV-MARRA

L.M.P. on behalf of
E.P., D.P., and K.P., minors,

      Plaintiff,

vs.

THE SCHOOL BOARD OF BROWARD
COUNTY, FLORIDA,

      Defendant.

_____/

## OPINION AND ORDER

This cause comes before the Court upon Defendant, School Board of Broward County's, Motion for Judgment on the Record on Counts I and III and Motion for Summary Judgment on Count II (DE 236); Defendant, School Board of Broward County's, Motion to Strike the Additional Evidence (DE 470); and Plaintiff's Motion for Partial Summary Judgment (DE 458). The Motions are ripe for review. On May 8, 2014, this Court held a hearing. For the reasons stated below, Defendant's Motion for Judgment on the Record and for Summary Judgment (DE 236) is **DENIED IN PART and GRANTED IN PART**; Plaintiff's Motion for Partial Summary Judgment (DE 458) is **DENIED**; and Defendant's Motion to Strike (DE 470) is **DENIED WITHOUT PREJUDICE.**

## I. Background[1]

E.P., D.P., and K.P. (the "Triplets") were born on January 4, 2001. From a very early age, they exhibited signs of developmental delay. Before the age of two, the Triplets began receiving early intervention services under Part C of the Individuals with Disabilities Education Act

---

[1] The Court draws the facts upon which the parties agree from the parties' Statements of Material Facts. Disputed facts are gathered from the record as cited.

("IDEA").[2]  In 2003, the Triplets were diagnosed with autism.  In May 2003, the parents hired David

Garcia and Behavioral Analysis, Inc. ("BAI") to provide each of the children with 30 hours per week

of one-on-one applied behavioral therapy ("ABA").  There was a dispute between the parents and

the Children's Diagnostic & Treatment Center of South Florida, Inc. ("CDTC"), the coordinator of

early intervention services for children in Broward County, regarding payment for the ABA services.

Approximately in June 2003, the parents consented to the evaluation of the children by the CDTC

for the purpose of resolving that dispute.  The parents did not consent to the concurrent evaluation

of the Triplets by the Defendant School Board of Broward County ("School Board").[3]

    The dispute with CDTC was settled in November 2003.  On November 6, 2003, the father

executed a consent form for the School Board's evaluation.  The School District received the pre-

referral for transition to Part B on November 12, 2003.  Pet.'s Ex. 3 (DE 488-27).  On November 18,

2003, the School Board's team conducted a child study meeting to review and discuss the data about

the Triplets available to the School Board at that time.  The parents were not present.  Plaintiff, the

Triplets' mother, asserts that the parents were improperly excluded from this meeting.

    On December 8, 2003, a meeting to discuss transition of the Triplets from the services

coordinated by the CDTC to the services provided by the School Board took place.  The parents took

---

[2]

    "Under Part C of the IDEA, states must provide disabled children under three years of age with an individualized family service plan, or IFSP, setting forth specific early intervention services necessary for the toddler or infant and their family. 20 U.S.C. § 1435(a)(4). Under Part B of the IDEA, states must provide disabled children between the ages of three and twenty-one with the opportunity to receive a 'free appropriate public education' ('FAPE') by offering each student special education and related services under an individualized education program, or IEP. 20 U.S.C. § 1412(a)(1)(A), (a)(4)."  *L.M.P. ex rel. E.P. v. Sch. Bd. of Broward Cnty., Fla.*, 516 F. Supp. 2d 1305, 1311 (S.D. Fla. 2007).

    [3] Plaintiff argues that the parents did not withhold consent to the evaluation by the School Board at this time, but that they simply did not agree to the concurrent evaluation by the CDTC and the School Board.  This is a distinction without a difference.  The bottom line is that the parents did not give their consent to the School Board's evaluation at that time.

part in that meeting and expressed their desire that the children continue to receive 30 hours per week of one-on-one ABA therapy.  Carol Bianco, one of the School Board employees present at the meeting, advised the parents that ABA therapy was not provided by the School Board as a Part B intervention service.  Tr. Admin. Hrg. (Bianco), p. 71.[4]  Carol Bianco, who has worked for the School Board for approximately 30 years, later testified that to her knowledge the policy of the School Board was to never approve ABA therapy.  *Id.*, p. 63-64.

After the meeting on December 8, 2003, the School Board evaluated the Triplets.  The evaluation of all three children lasted one hour and fifteen minutes.  Tr. Admin. Hrg. (Father), p. 887. Plaintiff contends that the evaluations conducted so quickly were deficient.

On November 12, 2003, the parents requested copies of the evaluation reports for the children and an Individualized Education Program ("IEP") meeting was set for December 18, 2003. However, the Triplets' father[5] requested that the IEP meeting be postponed.  The meeting was rescheduled for January 5, 2004, the day following the winter break and one day after the Triplets' third birthday.  The father attended this IEP meeting accompanied by a court reporter and David Garcia.  The father requested that the Triplets continue to receive the same level of ABA therapy. The father later testified at one time that the only option he would have accepted was 30 hours of at home one-on-one ABA therapy per week.  Tr. Admin. Hrg. (Father), p. 841.  At another time, the father testified that the issue of the location and the provider was not brought up, but that he would have accepted 25 hours at a school location and provided by a school therapist.  *Id.*, pp. 896-97.

---

[4] Citations to the transcript of the hearing held before the Administrative Law Judge ("ALJ") on January 24, 25, 27 and 28, 2005 will be made as "Tr. Admin. Hrg." followed by the name of the testifying witness and the page number.

[5] The Triplets' father is an attorney.  He represented his children and his wife in the administrative proceeding and in this case.

The Triplets' placement within the School Board's schools was also discussed at the January 5, 2004 meeting. The Triplets had an option of attending Baudhuin Preschool, a private facility located on the campus of Nova Southeastern University, or their neighborhood public school with a "Complex PLACE" program for autistic children. The January 5, 2004 meeting ended without a resolution of the issues presented.

On January 8, 2004, the father submitted a written request for an Independent Educational Evaluation ("IEE"). The continuation of the IEP meeting was scheduled for February 3, 2004. The parents were notified of this IEP meeting, but did not attend. The father felt that it was not appropriate to proceed at that time because his concerns raised in the January 5, 2004 meeting were not addressed and because the School Board had not acted on the IEE request. *Id.*, pp. 777-79. On February 12, 2004, the School Board granted the Triplets' request for the IEE. However, the parents did not follow through with the evaluation. The father later testified that he felt that because the School Board had already predetermined the placement for the children, it was going to be futile to proceed. *Id.*, p. 779.

The School Board developed temporary IEPs for the Triplets, and proposed placing them at Baudhuin Preschool or at their neighborhood public school with a "Complex PLACE" program. On February 5, 2004, the father notified the School Board in writing that the parents did not consent to the placement of the Triplets at the Baudhuin Preschool. Thus, the Triplets were not enrolled in any of the Broward County public schools for the 2004-2005 school year. The Triplets received ABA therapy from BAI until July 2004, and the services were paid for by the parents.

In March 2004, the parents had the Triplets evaluated by Dr. David Lubin, a principal and the primary clinician at the Children's Psychological Services ("CPS"). Dr. Lubin developed a

4

treatment plan for the Triplets that differed from the one that BAI had been implementing.  In July 2004, the parents terminated BAI, and hired CPS to provide 10 hours per week of one-on-one ABA therapy to the children using a new model.  Additionally, the Triplets were to receive speech therapy and occupational therapy.

On August 17, 2004, the parents requested a due process hearing.  On January 24, 25, 27, and 28, 2005, a hearing was held before an ALJ.  The Triplets requested reimbursement for the ABA therapy.  The father, David Garcia, Dr. Lubin, as well as Carol Bianco and several other School Board's employees testified at the hearing.

On April 25, 2005, the ALJ issued his Final Order.  The ALJ defined the issue before him as follows: "whether [the School Board], in consequence of its alleged failure to offer [the Triplets] . . . a free appropriate public education, should be required to reimburse [the Triplets'] parents for the cost of placing the triplets under the care of private therapists, which later treated the triplets using intensive, one-on-one behavioral therapy."  Final Order (DE 239-1).  The ALJ never reached the issue whether the Triplets were offered a FAPE.  However, the ALJ found that reimbursement was not appropriate under section 1412(a)(10)(C)(ii) of the IDEA and the Florida Administrative Rule 6A-6.03311(9)(c) because (a) the ABA therapy was a "treatment" rather than "education" or "instructional services;" (b) BAI and CPS, the providers of the ABA therapy to the Triplets, were not "private schools," but rather "clinics" providing treatment to "patients;" and (c) the Triplets had not received specially designed instruction and related services under the authority of a public agency prior to their enrollment in a private school.  Additionally, the ALJ found that (a) the School Board's employees engaged only in preparatory activities at the November 18, 2003 meeting, and that, therefore, no procedural violation occurred when the parents were not invited to attend this meeting;

5

(b) the School Board acted diligently and with reasonable promptness in evaluating the Triplets and in preparing their IEPs; (c) the School Board's evaluations of the Triplets in conjunction with the other information available to the IEP team were sufficient for the purposes of determining the children's eligibility for Part B services and developing their IEPs.

Subsequently, Plaintiff brought this action. The operative Third Amended Complaint (DE 320) alleges four causes of action: (I) violation of the Triplets' rights to a free and appropriate public education ("FAPE") under the IDEA, 20 U.S.C. § 1400, *et seq.*; (II) violation of the Triplets' rights to be free from discrimination because of their disability under Section 504 of the Rehabilitation Act, 29 U.S.C § 794; (III) violation of the Triplets' rights under Fla. Stat. § 1003.57; and (IV) violation of 42 U.S.C. § 1983 due to the denial of a FAPE. In each of the claims Plaintiff asks for (a) a declaration that the Triplets were denied a FAPE since their third birthday on January 5, 2004; (b) an injunction barring the School Board from continuing its policies of refusing to approve or even consider ABA therapy for children with autism and of segregating autistic students in private placements; and (c) an order reimbursing Plaintiff for the costs of continuing services, compensatory education, attorney's fees and costs, and pre- and post-judgment interest.

The School Board moved for a judgment on the record on Counts I and III, and for summary judgment on Counts II and IV. Plaintiff opposed the School Board's requests, submitted additional evidence, and asked for a judgment in her favor on all counts.[6] This evidence included the father's affidavit dated February 15, 2013 providing the details of the events that occurred subsequent to the

---

[6] Despite entitling her filing "Motion for Partial Summary Judgment," Plaintiff is asking the Court for a judgment in her favor on all claims.

administrative hearing.[7] (DE 451-3). The father states that the Triplets were enrolled in the Broward County school system for the 2005-2006 school year. Father's Aff., ¶¶ 8-11 (DE 451-3). According to the father, the School Board assigned the Triplets to Baudhuin Preschool without providing the parents with other options for the initial placement. *Id.* Over the following years, the father estimates that he attended more than 30 IEP meetings, every time requesting that the Triplets be provided ABA therapy. *Id.*, ¶¶ 12-15. The School Board has never agreed to include ABA therapy in the IEPs, and has also never, with only one exception, provided any written notices of refusal. *Id.*, ¶¶ 16-20. The parents also had the Triplets evaluated at the University of Miami and at the Neurobehavioral Institute. *Id.*, ¶¶ 21-24, 32. Those evaluations lasted several days for each of the children. *Id.* K.P. and D.P. have remained enrolled in the Broward County school system. *See id.*, ¶¶ 30-31. When the affidavit was written, they were in the 6th grade but read at the 1st grade level. *Id.* E.P. appears to be doing better, and attended private school for the 4th, 5th, and 6th grades. *See id.*

The Triplets continued to received ABA therapy, and the parents were paying for these services privately until approximately November 2011. *Id.*, ¶ 28. At that time, the father obtained an insurance policy, which provides coverage for the ABA therapy. *Id.* The parents are covering the cost of the policy and of the deductible. *Id.* The father asserts that the family has spent $792,945.15 on the services for the children over the years. *Id.*

## II. Legal standard

Some of the claims in this case are subject to the Federal Rule of Civil Procedure 56, and

---

[7] The School Board asserts that the Court should not consider this affidavit. The Court addresses this argument in Sections (II)(B) and (III)(B)(1) *infra*. In any event, for the purposes of this Opinion and Order, this affidavit provides only background information. The Court makes no findings on the basis of the information found in the affidavit of the Triplets' father.

some are subject to Rule 52.  The Court will address each standard in turn.

## A. Rule 56 standard

Ordinarily, the court may grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The stringent burden of establishing the absence of a genuine issue of material fact lies with the moving party.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The court should not grant summary judgment unless it is clear that a trial is unnecessary, *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986), and any doubts in this regard should be resolved against the moving party,  *see Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).

The movant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record], which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp.*, 477 U.S. at 323.  To discharge this burden, the movant must point out to the Court that there is an absence of evidence to support the nonmoving party's case.  *Id.* at 325.

After the movant has met its burden under Rule 56(a), the burden of production shifts and the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Electronic Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record . . . or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A) and (B).

Essentially, so long as the non-moving party has had an ample opportunity to conduct

discovery, it must come forward with affirmative evidence to support its claim. *Anderson*, 477 U.S. at 257. "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990). If the evidence advanced by the non-moving party "is merely colorable, or is not significantly probative, then summary judgment may be granted." *Anderson*, 477 U.S. 242, 249–50 (internal citations omitted).

Generally, "at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). However, the standard is different in cases brought pursuant to the IDEA and section 1003.57 of the Florida Statutes.

Because there is no right to a jury trial under the IDEA, the Rule 56 standard does not apply in IDEA cases, and district judges may engage in factfinding under Rule 52 with respect to IDEA claims. *Loren F. ex rel. Fisher v. Atlanta Indep. Sch. Sys.*, 349 F.3d 1309, 1313 (11th Cir. 2003). Also, "Florida has incorporated the federal [IDEA] guidelines into section 1003.57, Florida Statutes." *M.H. v. Nassau Cnty. Sch. Bd.*, 918 So. 2d 316, 318 (Fla. 1st DCA 2005); *L.G. ex rel. B.G. v. Sch. Bd. of Palm Beach Cnty.*, 255 F. App'x 360, 363 (11th Cir. 2007).

In contrast, there may be a right to jury trial under section 504 of the Rehabilitation Act, 29 U.S.C. §794(a), when plaintiff seeks legal remedies. *See Waldrop v. Southern Co. Serv., Inc.*, 24 F.3d 152, 155-57 (11th Cir. 1994) (alleged discrimination by an employer); *Whitehead by & through Whitehead v. Sch. Bd. for Hillsborough Cnty., Fla.*, 918 F. Supp. 1515, 1523 (M.D. Fla. 1996) (alleged discrimination by a school board). Here, Plaintiff seeks legal remedies, and the School Board does not assert that the Rule 56 standard should not apply to Counts II and IV.

9

Accordingly, the Court will apply the Rule 56 standard to the claims brought pursuant to the Rehabilitation Act and section 1983 of Title 42, and will apply the Rule 52 standard to the claims brought pursuant to the IDEA and section 1003.57 of the Florida Statutes.

**B. Rule 52 standard**

The IDEA authorizes an "aggrieved" party to bring an action in federal court challenging the findings and decision of the ALJ, with the burden of proof falling on the party challenging the agency decision. *See* 20 U.S.C. § 1415(i)(2)(A); *Barnett v. Fairfax Cnty. Sch. Bd.*, 927 F.2d 146, 152 (4th Cir.1991); *see also Schaffer ex rel. Schaffer v. Weast*, 546 U.S. 49, 58 (2005) (the burden of proof in an administrative hearing held under the IDEA falls on the party seeking relief). The district court "(i) shall receive the records of the administrative proceedings; (ii) shall hear additional evidence at the request of a party; and (iii) basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate." 20 U.S.C.A. § 1415 (West). Accordingly, the district court's decision must be based on a preponderance of the evidence, giving "due weight" to the results of the administrative findings. *Loren F. ex rel. Fisher v. Atlanta Indep. Sch. Sys.*, 349 F.3d 1309, 1314 (11th Cir. 2003); *M.M. v. Sch. Bd. of Miami–Dade Cnty.*, 437 F.3d 1085, 1097 (11th Cir. 2006) (citing *Bd. of Educ v. Rowley*, 458 U.S. 176, 206-08 (1982)). It may be necessary for the district court to conduct a bench trial to receive evidence and make the factual findings. *Loren*, 349 F.3d at 1319.

Plaintiff has submitted evidence that came to light after the administrative hearing, and the parties dispute what additional evidence, if any, this Court may consider. Ordinarily, the source of the evidence in an IDEA case will be the administrative record. *Walker Cnty. Sch. Dist. v. Bennett ex rel. Bennett*, 203 F.3d 1293, 1298 (11th Cir. 2000) (quoting *Town of Burlington v. Department*

10

*of Education*, 736 F.2d 773, 790–791 (1st Cir.1984), aff'd., 471 U.S. 359, 105 S.Ct. 1996, 85 L.Ed.2d 385 (1985)).  However, the IDEA authorizes district courts to hear "additional evidence." 20 U.S.C.A. § 1415(i)(2)(C)(ii) (West).  "Additional" means "supplemental." *Walker Cnty. Sch. Dist. v. Bennett ex rel. Bennett*, 203 F.3d 1293, 1298 (11th Cir. 2000).  The district court must be careful not to allow the additional evidence to change the nature of the case from an appeal of the administrative decision to a trial *de novo*. *Id.*  For example, it may be improper to allow a witness who testified at the administrative hearing to embellish his or her testimony. *Id.*  However, it is within the sound discretion of the district court to allow supplementation. *Id.*  "The reasons for supplementation will vary; they might include gaps in the administrative transcript owing to mechanical failure, unavailability of a witness, an improper exclusion of evidence by the administrative agency, and evidence concerning relevant events occurring subsequent to the administrative hearing." *Id.*  There are no rigid rules in this regard. *Id.*

### III. Discussion

**A. Section 1983 claim**

Plaintiff alleges a violation of section 1983 because the Triplets were denied their rights under the IDEA.  After this case was filed, the Eleventh Circuit Court of Appeals has held that "section 1983 actions for denial of rights conferred by the IDEA are barred because the IDEA's comprehensive enforcement scheme provides the sole remedy for statutory violations." *K.A. ex rel. F.A. v. Fulton Cnty. Sch. Dist.*, 741 F.3d 1195, 1210 (11th Cir. 2013).

Plaintiff agrees that this Court is bound by the Eleventh Circuit's holding in *K.A.*, and that Count IV of the Third Amended Complaint must be dismissed at this time.

11

**B. IDEA and section 1003.57 claims**

Plaintiff's position is that within the Broward County School District children with autism are never allowed to receive ABA therapy; that parents are not afforded meaningful participation in the IEP process; and that autistic children are not given the right to attend regular schools and instead are being segregated at the Baudhuin private preschool for disabled students.

The School Board's position is that Plaintiff may only raise the issues brought before the ALJ with respect to the initial temporary IEPs. Because administrative remedies were not exhausted as to any subsequent IEPs, the School Board contends that this Court should not consider any evidence relating to the events subsequent to the administrative hearing. Further, the School Board asserts that the ABA therapy is incorporated into the School Board's autism program, and it is available as a methodology at the discretion of the teachers. However, because this is only a methodology, it is not mentioned in the IEPs. Plaintiff responds that parents' meaningful participation in the development of the IEPs is the bedrock of the IDEA, and that because parents have no input in the classroom, their rights are violated if ABA therapy is not considered as a valid option when the IEPs are developed.

**1. Admissibility of evidence**

The School Board seeks exclusion of the additional evidence. Specifically, the School Board challenges the affidavits of the Triplets' father, Dr. Lubin, and Ms. Ahmeti. These affidavits are not necessary for the purposes of deciding the parties' cross motions now under consideration. Therefore, it is not necessary to resolve the issue of admissibility of evidence at this stage. The School Board may raise its admissibility objections again in the future.

However, because district courts may receive evidence about relevant events occurring

subsequent to the administrative hearing, the information in the Triplets' father's affidavit is considered only for the purpose of providing a background.  No ruling or determinations are made on the basis of this information.

### 2. Exhaustion

The School Board contends that Plaintiff can only challenge the initial temporary IEPs, which were the only IEPs before the ALJ.  The School Board argues that Plaintiff has not exhausted her administrative remedies with respect to all subsequent IEPs.  Plaintiff contends that because the School Board has a policy of denying ABA therapy and of segregating autistic students, it would be futile to exhaust the administrative remedies every year.  The Court agrees with Plaintiff on this issue.

As this Court has previously explained:

> To ensure that disabled children with disabilities are guaranteed procedural safeguards with respect to the provision of FAPE under Part B, the IDEA requires states to provide, among other things, "an opportunity to present complaints with respect to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child." 20 U.S.C. § 1415(b)(6).  When a complaint under section 1415(b)(6) is received by the state, the parents of the disabled child have an opportunity for an important due process hearing conducted by the state agency.  20 U.S.C. §1415(f).  Following a decision by the state agency, the parents have the right to bring a civil action with respect to the complaint in either state or federal court.  20 U.S.C. § 1415(i)(2); Florida Statute § 1003.57.

*L.M.P. ex rel. E.P. v. Sch. Bd. of Broward Cnty., Fla.*, 516 F. Supp.2d 1294, 1300-01 (S.D. Fla. 2007).

As mentioned earlier, "Florida has incorporated the federal [IDEA] guidelines into section

1003.57, Florida Statutes."[8]  *M.H. v. Nassau Cnty. Sch. Bd.*, 918 So. 2d 316, 318 (Fla. 1st DCA 2005).  Thus, "[i]n Florida, the appropriate administrative procedure is to request a due process hearing before a state ALJ in the Florida [Division of Administrative Hearings]." *Sch. Bd. of Manatee Cnty., Fla. v. L.H. ex rel. D.H.*, 666 F. Supp. 2d 1285, 1291 (M.D. Fla. 2009).

Likewise, "whether claims asserting the rights of disabled children are brought pursuant to the IDEA, the ADA, Section 504, or the Constitution, they must first be exhausted in state administrative proceedings." *M.T.V. v. DeKalb Cnty. Sch. Dist.*, 446 F.3d 1153, 1158 (11th Cir. 2006).  Thus, exhaustion is a prerequisite to the civil action for denial of appropriate public education to a disabled child, and a failure to exhaust administrative remedies by requesting and participating in a due-process hearing should result in dismissal of the civil action.  *See Sch. Bd. of Lee Cnty., Fla. v. M.M. ex rel. M.M.*, 348 F. App'x 504, 511 (11th Cir. 2009) (citing *N.B. v. Alachua Cnty. Sch. Bd.*, 84 F.3d 1376, 1378 (11th Cir.1996)).  However, if exhaustion would be futile or inadequate, a plaintiff may be excused from this requirement.  *M.T.V.*, 446 F.3d at 1159.

Here, Plaintiff alleges that the School Board has a policy of predetermining placements for

---

[8] Section 1003.57 states in pertinent part:
A student may not be given special instruction or services as an exceptional student until after he or she has been properly evaluated and found eligible as an exceptional student in the manner prescribed by rules of the State Board of Education. The parent of an exceptional student evaluated and found eligible or ineligible shall be notified of each such evaluation and determination. Such notice shall contain a statement informing the parent that he or she is entitled to a due process hearing on the identification, evaluation, and eligibility determination, or lack thereof. Such hearings are exempt from ss. 120.569, 120.57, and 286. 011, except to the extent that the State Board of Education adopts rules establishing other procedures. Any records created as a result of such hearings are confidential and exempt from s. 119.07(1). The hearing must be conducted by an administrative law judge from the Division of Administrative Hearings pursuant to a contract between the Department of Education and the Division of Administrative Hearings. The decision of the administrative law judge is final, except that any party aggrieved by the finding and decision rendered by the administrative law judge has the right to bring a civil action in the state circuit court. In such an action, the court shall receive the records of the administrative hearing and shall hear additional evidence at the request of either party.

Fla. Stat. Ann. § 1003.57(1)(c).

autistic children and a policy of always denying ABA therapy. This Court has already ruled that in light of these allegations, it would be futile to require all putative class members to exhaust administrative remedies. *L.M.P. ex rel. E.P. v. Sch. Bd. of Broward Cnty., Fla.*, 516 F. Supp. 2d 1294, 1305 (S.D. Fla. 2007). The same rationale applies here. The Court will not require Plaintiff to engage in the futile exercise of going through at least 3 administrative processes a year. Therefore, Plaintiff may challenge the initial as well as subsequent IEPs.

### 3. Substantive arguments

The School Board asks this Court to affirm the Final Order of the ALJ, and deny Plaintiff the reimbursement. Plaintiff, on the other hand, requests a judgment on the record in her favor, or, alternatively, a bench trial that will protect her right to a jury trial on the Rehabilitation Act claim. The Court finds that a judgment on the record is not appropriate for either side at this time because the record is incomplete with respect to the exact nature of the ABA therapy.

As a condition of receiving federal funds, the IDEA requires states to provide all children with disabilities between the ages of 3 and 21 residing in the state a "free appropriate public education" ("FAPE"). 20 U.S.C.A. § 1412(a)(1) (West). Additionally, the states must meet several other conditions relevant to this case by having the procedures in place to (a) locate children with disabilities (hereafter, the "Child Find" obligation); (b) evaluate them; (c) develop, review, and revise "individualized education programs" ("IEPs") for the children with disabilities in accordance with section 1414(d); (d) educate disabled children in the "least restrictive environment" ("LRE") (hereafter, the "mainstreaming" requirement); and (e) provide disabled children and their parents with procedural safeguards. 20 U.S.C.A. § 1412(a)(3)-(7).

A FAPE includes "special education" and "related services" that "(A) have been provided

15

at public expense, under public supervision and direction, and without charge; (B) meet the standards

of the State educational agency; (C) include an appropriate preschool, elementary school, or

secondary school education in the State involved; and (D) are provided in conformity with the

individualized education program required under section 1414(d)." 20 U.S.C.A. § 1401(9) (West);

*see also* 34 C.F.R. § 300.17.  "Special education" means "specially designed instruction, at no cost

to parents, to meet the unique needs of a child with a disability, including– (A) instruction conducted

in the classroom, in the home, in hospitals and institutions, and in other settings; and (B) instruction

in physical education." 20 U.S.C.A. § 1401(29) (West).  The term "related services" includes:

> transportation, and such developmental, corrective, and other supportive services
> (including speech-language pathology and audiology services, interpreting services,
> psychological services, physical and occupational therapy, recreation, including
> therapeutic recreation, social work services, school nurse services designed to enable
> a child with a disability to receive a free appropriate public education as described
> in the individualized education program of the child, counseling services, including
> rehabilitation counseling, orientation and mobility services, and medical services,
> except that such medical services shall be for diagnostic and evaluation purposes
> only) as may be required to assist a child with a disability to benefit from special
> education, and includes the early identification and assessment of disabling
> conditions in children.

20 U.S.C.A. § 1401(26) (West).

Under the IDEA, a district court may "grant such relief as the court determines is

appropriate" to a party aggrieved by the administrative decision.  20 U.S.C.A. § 1415(i)(2)(C)(iii)

(West).  The courts have broad discretion in choosing remedies in this context.  *R.L. v. Miami-Dade*

*Cnty. Sch. Bd.*, 757 F.3d 1173, 1178 (11th Cir. 2014).  The relief may include rreimbursement of

costs the parents incurred by pursuing an alternative placement, and may include an award of

compensatory education in the form of extra educational services designed to make up for a deficient

program.  *Id.*

16

With respect to the process that had taken place by the time the ALJ held the administrative hearing, the School Board developed temporary IEPs and offered the Triplets a placement. Neither satisfied the parents, who decided not to enroll the Triplets in any Broward County public school for the 2004-2005 school year. Instead, the Triplets continued to receive ABA therapy from BAI without a referral from the School Board. Therefore, the issue before the ALJ was whether the School Board was required to reimburse the parents the cost of this unilaterally obtained placement.

In this context, the court must determine (1) whether the School Board followed the IDEA's procedural requirement; (2) whether the proposed IEP was "reasonably calculated to enable the child to receive educational benefits;" and (3) whether the alternative placement was appropriate for the child. *R.L. v. Miami-Dade Cnty. Sch. Bd.*, 757 F.3d 1173, 1177 and 1182 (11th Cir. 2014) (quoting *JSK v. Hendry Cnty. Sch. Bd.*, 941 F.2d 1563, 1571 (11th Cir.1991) and *Bd. of Educ. of Hendrick Hudson Centr. Sch. Dist., Westchester Cnty. v. Rowley*, 458 U.S. 176, 206–07, 102 S.Ct. 3034, 3051, 73 L.Ed.2d 690 (1982)); *M.M. ex rel. C.M. v. Sch. Bd. of Miami-Dade Cnty., Fla.*, 437 F.3d 1085, 1097 (11th Cir. 2006).

As mentioned earlier, the ALJ addressed the Triplets' procedural arguments with respect to the initial IEPs. In particular, the ALJ found that: (a) the School Board's employees engaged only in preparatory activities at the November 18, 2003 meeting, and that, therefore, no procedural violation occurred when the parents were not invited to attend this meeting; (b) the School Board acted diligently and with reasonable promptness in evaluating the Triplets and in preparing their IEPs; (c) the School Board's evaluations of the Triplets in conjunction with the other information available to the IEP team were sufficient for the purposes of determining the children's eligibility for Part B services and developing their IEPs. Because the Court finds that a trial is needed to

17

resolve Plaintiff's claims, the Court need not at this time address Plaintiff's argument that the ALJ erred in making these findings.

The ALJ found it unnecessary to decide whether the proposed IEPs were adequate or whether the School Board offered the Triplets a FAPE because he found that reimbursement was not available under section 1412(a)(10)(C)(ii) of the IDEA and the Florida Administrative Rule 6A-6.03311(9)(c) anyway. The ALJ found reimbursement to be unavailable because (a) the ABA therapy was a "treatment" rather than "education" or "instructional services;" (b) BAI and CPS, the providers of the ABA therapy to the Triplets, were not "private schools," but rather "clinics" providing treatment to "patients;" and (c) the Triplets had not received specially designed instruction and related services under the authority of a public agency prior to their enrollment in a private school. The School Board urges this Court to uphold these findings. However, several reasons preclude the Court from doing so.

Because the ALJ found that section 1415 only applied to the courts and not to the agencies, he made his findings under section 1412(a)(10)(C)(ii)[9] and the Florida Rule. Before this Court,

---

[9] This subsection states in pertinent part:
(C) Payment for education of children enrolled in private schools without consent of or referral by the public agency
(i) In general
Subject to subparagraph (A), this subchapter does not require a local educational agency to pay for the cost of education, including special education and related services, of a child with a disability at a private school or facility if that agency made a free appropriate public education available to the child and the parents elected to place the child in such private school or facility.

(ii) Reimbursement for private school placement
If the parents of a child with a disability, who previously received special education and related services under the authority of a public agency, enroll the child in a private elementary school or secondary school without the consent of or referral by the public agency, a court or a hearing officer may require the agency to reimburse the parents for the cost of that enrollment if the court or hearing officer finds that the agency had not made a free appropriate public education available to the child in a timely manner prior to that enrollment.

20 U.S.C.A. § 1412(a)(10)(C) (West).

18

however, Plaintiff relies on section 1415(i).    Unlike section 1412(a)(1)(C)(ii), section 1415(i)(2)(C)(iii)  does not specify that reimbursement is only available for "private school" placements, and allows the courts to fashion an "appropriate" remedy.    20 U.S.C.A. §§ 1412(a)(1)(C)(ii), 1415(i)(2)(C)(iii) (West).  After the ALJ issued his Final Order, the Supreme Court found that reimbursement may be awarded under either section 1412(a)(10)(C)(ii) or 1415(i)(2)(C)(iii).  *Forest Grove Sch. Dist. v. T.A.*, 557 U.S. 230, 247 (2009) (finding that addition of section 1412(a)(10)(C)(ii) to the IDEA with the 1997 amendments did not abrogate the courts' authority to award reimbursements under section 1415).  Therefore, even if BAI and CPS are not "schools," this would not necessarily preclude this Court from finding that reimbursement is warranted.

Further, the Supreme Court has found that:

> IDEA authorizes reimbursement for the cost of private special-education services when a school district fails to provide a FAPE and the private-school placement is appropriate, regardless of whether the child previously received special education or related services through the public school.  When a court or hearing officer concludes that a school district failed to provide a FAPE and the private placement was suitable, it must consider all relevant factors, including the notice provided by the parents and the school district's opportunities for evaluating the child, in determining whether reimbursement for some or all of the cost of the child's private education is warranted.

*Id.*

Therefore, the ALJ's reasoning that the Triplets could not obtain reimbursement of the cost of the ABA therapy because the Triplets had not received services from a public school system under Part B of the IDEA cannot be upheld as the School Board requests.[10]

---

[10]Additionally, after the Final Order had been issued, the Eleventh Circuit held that receiving early intervention services under the authority of a public agency satisfies the requirement of section 1412(a)(10)(C)(ii).  *M.M. ex rel. C.M. v. Sch. Bd. of Miami-Dade Cnty., Fla.*, 437 F.3d 1085, 1098 (11th Cir. 2006).

Further, regardless of whether section 1415 or section 1412 is applied, this Court cannot agree with the ALJ's reasoning that the ABA therapy was not reimbursable under the IDEA because it did not constitute "education." As mentioned earlier, a FAPE includes both "special education" and "related services." 20 U.S.C.A. § 1401(9) (West). The Final Order analyzes whether the ABA therapy qualifies as "special education" or "instructional services;" finds that it does not; and acknowledges that ABA therapy may constitute "related services" under the IDEA. Final Order, ¶¶ 26-28. Further, the ALJ was convinced that BAI and CPS provided the Triplets with appropriate therapeutic services, but was not convinced that the Triplets had to have 10 hours per week of one-on-one ABA therapy in order to benefit from specially designed instruction which the Triplets at that point were yet to receive. *Id.*, ¶¶ 28, 82. At the same time, the ALJ stated that there was a lack of evidence in the record as to what exactly the ABA therapy was. *Id.*, ¶ 8.

"Related services" include "psychological services." 20 U.S.C.A. § 1401(26) (West). Moreover, in *R.L. v. Miami-Dade Cnty. Sch. Bd.*, the Eleventh Circuit recently found that the Miami-Dade County School Board's position that speech and occupational therapies were not reimbursable because they were characterized as medical was hyper-technical and unconvincing, and upheld reimbursement. 757 F.3d 1173, 1184 (11th Cir. 2014). The courts must look at the nature of the services rather than at the labels attached to them. *Id.* In light of these authorities, the Court cannot uphold the ALJ's finding that ABA therapy is not reimbursable education.

Further, the acknowledged lack of evidence on the nature of the ABA therapy convinces this Court that a bench trial is necessary to resolve Plaintiff's claims brought under the IDEA and section 1003.57 of the Florida Statutes. Plaintiff attempted to fill the gaps in the record by filing Dr. Lubin's affidavit. The School Board argues that this affidavit is not admissible for procedural reasons. Thus,

even if the Court were to address this argument now, which the Court finds unnecessary to do, the substance of Dr. Lubin's testimony submitted in the form of the affidavit will not have been subject to adversary testing.  Additionally, the evidence about the IEPs subsequent to the initial ones was not before the ALJ.  Therefore, the record must be developed in this regard.

**C. Rehabilitation Act claim**

In support of her Rehabilitation Act claim Plaintiff argues that the School Board has a policy of segregating autistic children in a private Baudhuin Preschool for disabled students rather than a policy of first considering placing them in a regular classroom, and then considering other options as may be necessary to accommodate the student's disability.  According to Plaintiff, this policy discriminates against children with disabilities as compared with typical children.  Plaintiff also seems to argue that a Rehabilitation Act violation should be found because the School Board systematically denies the parents of disabled students their rights to participate meaningfully in the process of developing the IEP because of the policy of predetermination that ABA therapy is not going to be included on the IEPs.

The School Board asserts that Plaintiff cannot establish bad faith or deliberate indifference.  Both sides ask this Court to grant them summary judgment on this claim.  The Court finds that granting summary judgment on this record is not appropriate.

Section 504 of the Rehabilitation Act states in pertinent part:

No otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency.

29 U.S.C.A. § 794 (West).

A plaintiff must establish intentional discrimination to succeed on a Rehabilitation Act claim for damages. *T.W. ex rel. Wilson v. Sch. Bd. of Seminole Cnty., Fla.*, 610 F.3d 588, 603-04 (11th Cir. 2010); *Wood v. President & Trustees of Spring Hill Coll. in City of Mobile*, 978 F.2d 1214, 1219 (11th Cir. 1992). Therefore, a plaintiff must demonstrate that defendant acted with deliberate indifference by showing that "defendant *knew* that harm to a federally protected right was substantially likely and . . . *failed* to act on that likelihood." *Liese v. Indian River Cnty. Hosp. Dist.*, 701 F.3d 334, 344 - 48 (11th Cir. 2012) (quoting *T.W. ex rel. Wilson v. Sch. Bd. of Seminole Cnty., Fla.*, 610 F.3d 588, 604 (11th Cir. 2010)). This requires more than gross negligence. *Id.* at 344. Bad faith or gross misjudgment on the part of the school board may satisfy the standard. *W.C. ex rel. Sue C. v. Cobb Cnty. Sch. Dist.*, 407 F. Supp. 2d 1351, 1363-64 (N.D. Ga. 2005).

Generally, "good faith attempts to pursue legitimate ends are not sufficient to support an award of compensatory damages under section 504." *Wood*, 978 F.2d at 1219. However, a school board's complete disregard of the needs of students with disabilities may constitute a Rehabilitation Act violation. *See H.*, 784 F. Supp. 2d at 1263; *Scaggs v. New York Dep't of Educ.*, 06 CV 0799 JFB VVP, 2007 WL 1456221, at *15-16 (E.D.N.Y. May 16, 2007) (plaintiffs' allegations that the school board failed to create the IEPs at all for several students when it was aware that the students had disabilities, the parents requested accommodations, and the school board intentionally refused withstood a motion to dismiss).

The School Board relies heavily on a line of cases that have found that "[t]o make a claim under section 504 in the education context, something more than an IDEA violation for failure to provide a FAPE in the least restrictive environment must be shown." *W.C.*, 407 F. Supp. 2d at 1363-64 (citing *N.L. ex rel. Mrs. C. v. Knox County Schs.*, 315 F.3d 688, 695 (6th Cir.2003); *Sellers by*

*Sellers v. School Bd. of City of Mannassas, Va.*, 141 F.3d 524, 529 (4th Cir.1998); *Monahan v. Nebraska*, 687 F.2d 1164, 1170 (8th Cir.1982)); *see also D.A. ex rel. Latasha A. v. Houston Indep. Sch. Dist.*, 629 F.3d 450, 454 (5th Cir. 2010); *J.D.P. v. Cherokee Cnty., Ga. Sch. Dist.*, 735 F. Supp. 2d 1348, 1364 (N.D. Ga. 2010) (citing *W.C.*, 407 F. Supp. 2d at 1364); *H. v. Montgomery Cnty. Bd. of Educ.*, 784 F. Supp. 2d 1247, 1262-63 (M.D. Ala. 2011) (stating that this requirement originated, in part, from dicta in *Monahan v. Nebraska*, 687 F.2d 1164 (8th Cir.1982)); *K.I. ex rel. Jennie I. v. Montgomery Pub. Sch.*, 805 F. Supp. 2d 1283, 1298 (M.D. Ala. 2011). The School Board argues that both bases for Plaintiff's request for relief under the Rehabilitation Act are essentially allegations of a denial of a FAPE in the least restrictive environment, which is not actionable under the Rehabilitation Act.

However, the Third Circuit has held that the same conduct may be the basis of claims under both the IDEA and the Rehabilitation Act. *Andrew M. v. Delaware Cnty. Office of Mental Health & Mental Retardation*, 490 F.3d 337, 349 (3d Cir. 2007). For example, the regulations implementing the Rehabilitation Act also include an obligation to provide a free appropriate public education to disabled or handicapped persons. 34 C.F.R. §§ 104.3, 104.33; *Andrew M.*, 490 F.3d at 349. Therefore, the Third Circuit concludes that violations of Part B of the IDEA are almost always violations of the Rehabilitation Act. *Andrew M.*, 490 F.3d at 349 (finding that plaintiffs who were entitled to a reimbursement under Part C of the IDEA did not establish a claim under the Rehabilitation Act).[11]

---

[11] However, this is not the case with the allegations of a violation of Part C of the IDEA because Part C programs serve only disabled children, and there can be no nondisabled comparators. *See id.*; *accord Berg v. Florida Dep't of Labor & Employment Sec., Div. of Vocational Rehab.*, 163 F.3d 1251, 1255 (11th Cir. 1998) (questioning whether the Rehabilitation Act prohibits discrimination by a program that serves exclusively disabled persons, but leaving this issue undecided, and finding that plaintiff failed to adduce any evidence of discriminatory intent).

Importantly, the IDEA contains the following provision: "[n]othing in this chapter shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, the Americans with Disabilities Act of 1990 [42 U.S.C.A. § 12101 *et seq.*], title V of the Rehabilitation Act of 1973 [29 U.S.C.A. § 791 *et seq.*], or other Federal laws protecting the rights of children with disabilities." 20 U.S.C. § 1415(l) (West). Therefore, this Court agrees with Plaintiff that the same conduct may be the basis of a claim under both Part B of the IDEA and the Rehabilitation Act. *See also D.A. ex rel. Latasha A. v. Houston Indep. Sch. Dist.*, 629 F.3d 450, 454 (5th Cir. 2010) (a "cause of action is stated under § 504 when it is alleged that a school district has refused to provide reasonable accommodations for the handicapped plaintiff to receive the full benefits of the school program"). However, in order to recover damages under the Rehabilitation Act, Plaintiff must also show that the School Board acted with deliberate indifference. *Liese v. Indian River Cnty. Hosp. Dist.*, 701 F.3d 334, 344 - 48 (11th Cir. 2012); *W.C. ex rel. Sue C. v. Cobb Cnty. Sch. Dist.*, 407 F. Supp. 2d 1351, 1363-64 (N.D. Ga. 2005).

Here, this Court has determined that a trial is necessary to resolve factual issues with respect to Plaintiff's IDEA claim. Further, Ms. Shermett, a representative of the School Board, testified in her deposition that curriculum is not discussed with the parents during the IEP process, and that if a parent wants the team to consider a curriculum other than the one used by the School Board, it will not be considered. Shermett Dep., p. 75-77 (DE 458-5). Ms. Shermett also testified that the School Board trains its employees on the IEP process. *Id.* An inference may be made from this testimony that the School Board is aware of its obligations,[12] but that it acts with deliberate indifference to the

---

[12]Additionally, Plaintiff relies on the deposition of Leah Kelly, Director of Exceptional Student Education at the School Board at the relevant time, for the proposition that the School Board was aware of its obligations under the law to minimize segregation of autistic students in private schools from nondisabled children, which allegedly was being

appropriateness of the education a child will receive as a result of the IEP process when no consideration is given to the options other than the predetermined ones.[13]  Therefore, a genuine issue of material fact exists as to Plaintiff's Rehabilitation Act claim.  The Court will conduct a hybrid trial: bench trial on Counts I and III, and a jury trial on Count II.  *See Loren F. ex rel. Fisher v. Atlanta Indep. Sch. Sys.*, 349 F.3d 1309, 1320 (11th Cir. 2003).

### IV. Conclusion

Accordingly, Defendant's Motion for Judgment on the Record and for Summary Judgment (DE 236) is **GRANTED IN PART and DENIED IN PART**.  Count IV of the Third Amended Complaint is **DISMISSED**.  Plaintiff's Motion for Partial Summary Judgment (DE 458) is **DENIED**.  Defendant's Motion to Strike (DE 470) is **DENIED WITHOUT PREJUDICE.**

The parties shall confer and within 20 days from the date of this Order shall advise the Court when they can be ready for trial and how many trial days they will need.

**DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County, Florida, this 23rd day of September, 2014.

KENNETH A.  MARRA
United States District Judge

---

systematically violated.  However, the deposition excerpt used to support the School Board's awareness of the obligation only contains the question and the objection, but not Ms. Kelly's answer.  Pl.'s Ex. N, Kelly Dep., p. 32 (DE 458-16).

[13]This statement should not be construed as an indication of the Court's ultimate resolution of the issues that will come before it in the bench trial.